[No. B173987. Second Dist., Div. Eight. Sept. 27, 2005.]

THE FOUNDATION FOR TAXPAYER AND CONSUMER RIGHTS et al.,
Plaintiffs and Respondents, v.
JOHN GARAMENDI, as Insurance Commissioner, etc., Defendant and
Respondent;
STATE OF CALIFORNIA, Defendant and Appellant;
MERCURY INSURANCE GROUP et al., Interveners and Appellants;
SAM DONABEDIAN, Intervener and Respondent.

1356

**COUNSEL**

Bill Lockyer, Attorney General, W. Dean Freeman, Mark P. Richelson and Stephen Lew, Deputy Attorneys General, for Defendant and Appellant.

Douglas L. Hallett, Joseph B. Miller, Marc J. Levine; and Victor Poltrock for Intervener and Appellant Mercury Insurance Group.

Barger & Wolen, Kent R. Keller, Larry M. Golub, Allison C. Gordon and Michael A. S. Newman for Intervener and Appellant Association of California Insurance Companies.

Harvey Rosenfield and Pamela M. Pressley for Plaintiff and Respondent Foundation for Taxpayer and Consumer Rights.

Mark Savage and Norma Garcia for Plaintiffs and Respondents Consumers Union of United States, Inc., Southern Christian Leadership Conference of Greater Los Angeles and National Council of La Raza.

Richard A. Marcantonio and Michelle N. Rodriguez for Plaintiffs and Respondents.

Strumwasser & Woocher, Michael J. Strumwasser, Fredric D. Woocher, Becky L. Monroe; Gary M. Cohen and Bryant Henley for Defendant and Respondent.

Gosharian & Marshall, Mark Goshgarian; Roxborough, Pomerance & Nye, Drew E. Pomerance and Vincent S. Gannuscio for Intervener and Respondent.

OPINION

**FLIER, J.**—In this case, we are asked to determine the validity of Senate Bill No. 841 (2003–2004 Reg. Sess.) (Sen. Bill 841), a legislative amendment to Proposition 103, the "Insurance Rate Reduction and Reform Act" the voters passed on November 8, 1988. (Ins. Code, § 1861.01 et seq.; Stats. 1988, p. A-276 et seq.) The trial court ruled Sen. Bill 841 invalid because it does not further the purposes of Proposition 103 and therefore exceeds the power to amend the initiative that the voters granted to the Legislature. We agree and affirm.

## BACKGROUND

The voters of California passed Proposition 103 with the express intention to protect consumers from arbitrary insurance rates and practices, to encourage a competitive insurance marketplace, to provide for an accountable insurance commissioner and to ensure that insurance is fair, available, and affordable for all Californians. (Prop. 103, § 2 [uncodified preamble, "Purpose"], reprinted at Historical and Statutory Notes, 42A West's Ann. Ins. Code (1993 ed.) foll. § 1861.01, p. 649 (Historical and Statutory Notes); see *State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1041 [12 Cal.Rptr.3d 343, 88 P.3d 71].) In subdivision (a) of section 8 of Proposition 103, the voters provided that the act "shall be liberally construed and applied in order to fully promote its underlying purposes." (Historical and Statutory Notes, *supra*, at p. 649.) The voters further provided in subdivision (b) of section 8 that "[t]he provisions of this act shall not be amended by the Legislature *except to further its purposes*."[1] (Italics added.)

■ Proposition 103 added section 1861.02 to the Insurance Code.[2] As enacted by the voters, subdivision (a) of section 1861.02 provides that rates and premiums for an automobile insurance policy shall be determined by application of the following factors, in decreasing order of importance: (1) The insured's driving safety record; (2) The number of miles the insured drives annually; (3) The insured's number of years of driving experience; and (4) "Such other factors as the commissioner may adopt by regulation that

---

[1] Proposition 103, section 8, subdivision (b) reads: "The provisions of this act shall not be amended by the Legislature *except to further its purposes* by a statute passed in each house by roll call vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electorate." (Historical and Statutory Notes, 42A West's Ann. Ins. Code, *supra*, at pp. 649–650, italics added.)

[2] All further section references are to the Insurance Code unless otherwise indicated.

have a substantial relationship to the risk of loss." (§ 1861.02, former subd. (a).)

The voters further provided in section 1861.02, former subdivision (a)(4): "The regulations shall set forth the respective weight to be given each factor in determining automobile rates and premiums. Notwithstanding any other provision of law, the use of any criterion without such approval shall constitute unfair discrimination." In subdivision (b) of section 1861.02, the voters also provided for a "Good Driver Discount" policy for applicants who met certain criteria. (§ 1861.02, subd. (b).)

Of particular interest to this case, the voters also provided, in subdivision (c) of section 1861.02, that *"[t]he absence of prior automobile insurance coverage, in and of itself,*[3] *shall not be a criterion for determining eligibility for a Good Driver Discount policy, or generally for automobile rates, premiums, or insurability."* (§ 1861.02, subd. (c), italics added.)

In 1996, the Insurance Commissioner adopted regulations that listed "persistency" as an optional rating factor for granting consumers discounts on automobile insurance premiums. (See Cal. Code Regs., tit. 10, § 2632.5, subd. (d)(11), Register 96, No. 27 (July 5, 1996) pp. 728.11–728.12; *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 973 [11 Cal.Rptr.3d 45] (*Donabedian*).) The regulations as adopted, however, contained no definition of "persistency." (*Donabedian, supra,* at p. 973.) As a result, insurers employed different interpretations of that term. Some insurers interpreted "persistency" to mean the number of years a customer has

---

[3] Discriminatory treatment of the uninsured was therefore of major significance prior to the passage of Proposition 103. In 1985, the Insurance Commissioner had issued Bulletin No. 85-11, Surcharging of Risks Which Have No Evidence of Prior Insurance, indicating that with the enactment of the Financial Responsibility Act, which imposed penalties for a driver's failure to possess automobile insurance, the Department of Insurance had received an increasing number of complaints concerning the practice of some insurers of either surcharging applicants or placing applicants in a substandard program solely because they had not previously carried automobile liability insurance. The bulletin warned carriers that such rating practice could result in a charge of unfair rate discrimination, stating, "It has been the position of this Department that lack of evidence of prior insurance *in itself* is not a proper rating standard." (Cal. Dept. of Ins., Bull. No. 85-11 (July 31, 1985) Surcharging of Risks Which Have No Evidence of Prior Insurance, pp. 899–900, italics added.) The commissioner stated that an applicant could have lacked prior insurance for many reasons having no bearing on the applicant's future loss potential and that carriers should review the specific conditions that led to an applicant's failure to carry insurance "rather than apply a blanket surcharge simply because the applicant has had no prior insurance." (*Ibid.*) Consequently, "[w]ithout support data, the application of a no-prior-insurance surcharge or placing the risk in a substandard program solely because the applicant has not had prior insurance is considered unfairly discriminatory . . . ." (*Ibid.*)

maintained insurance with his or her *current* insurer or affiliate. Other insurers defined "persistency" more broadly to include the number of years a customer has maintained insurance with *any* insurer or affiliate. (*Id.* at pp. 973–974; see Cal. Dept. of Ins., Initial Statement of Reasons, RH-402 (Dec. 21, 2001) p. 1 (RH-402).)

In December 2001, then Insurance Commissioner Harry Low determined that some insurers in the latter category "may have impermissibly required consumers to provide evidence of prior insurance to show that the consumer was 'persistently' covered by one insurer or another over time," i.e., to show he or she was previously insured. (RH-402, *supra*, pp. 1–2.) Commissioner Low proposed to amend the insurance regulations "to ensure that insurance carriers do not consider a consumer's lack of prior insurance for determining eligibility for a Good Driver Discount policy, or generally for automobile rates, premiums, or insurability." (*Id.*, p. 1.)

Commissioner Low proposed to do so under the power conferred by section 1861.02, subdivision (e), authorizing him to adopt regulations to implement section 1861.02. Commissioner Low announced that certain modifications to the use of persistency as an optional rating factor were "necessary to effectively prevent the use of prior insurance for the assignment of automobile rates, premiums or insurability." (RH-402, *supra*, p. 2.) Accordingly, Commissioner Low proposed to amend existing automobile insurance regulations to "require each insurer to consider only the length of time a consumer has been continuously covered *with the present insurer's company*" when using persistency as an optional rating factor. (*Ibid.*, italics added.)

In August 2002, Commissioner Low adopted the proposed regulation, allowing persistency discounts only for the "currently insured" of the insurer or affiliate, but not for customers of unaffiliated insurers.[4] (Cal. Code Regs., tit. 10, § 2632.5, subd. (d)(11)(A), (B), (D), Register 2002, No. 36-Z (Sept. 6, 2002) p. 1812.) Such regulation provides that "[a]n insurer shall not apply a persistency credit for a new policy issued to an individual, *unless that individual is currently insured.* Nor shall any insurer apply persistency, at any time, when based in whole or in part upon automobile insurance coverage provided by a *non-affiliated insurer.*"[5] (*Id.*, subd. (d)(11)(B), italics added.)

---

[4] The regulations define "currently insured" as "a person who is *presently covered* for automobile insurance *by the insurer or affiliate,*" i.e., an existing customer of the insurer or affiliate. (Cal. Code Regs., tit. 10, § 2632.5, subd. (d)(11)(D), italics added.)

[5] According to petitioners, no insurer sought judicial review to challenge the Department of Insurance's enactment of this regulation, the validity of which is not before this court.

In 2003, however, the Legislature passed Sen. Bill 841 as an urgency measure to override the Insurance Commissioner's new regulation restricting the use of persistency as an optional rating factor. Sen. Bill 841 purports to amend section 1861.02 to allow insurers to give persistency discounts to drivers previously insured with *any* insurer. Subdivision (c) of section 1861.02 declares that the Legislature "finds and declares that it furthers the purpose of Proposition 103 to encourage competition among carriers so that coverage overall will be priced competitively."[6] (Stats. 2003, ch. 169, § 1.) With limited exceptions, the legislative amendment allows insurers to make persistency discounts to the previously *insured* while denying such discounts to other applicants solely because they were previously *uninsured.*

█ The issue presented in this case is whether Sen. Bill 841 is unlawful under Proposition 103 because it necessarily uses the absence of prior insurance, "in and of itself" (§ 1861.02, subd. (c)), as a criterion in setting rates and premiums. The trial court below found section 1861.02, subdivision (c) to be ambiguous and that the Insurance Commissioner's interpretation of that section in the adopted regulation is entitled to some deference. We agree and hold that Sen. Bill 841 is facially invalid because it does not further the purposes of and undermines one of the major purposes of Proposition 103, and it arrogates to the Legislature the Insurance Commissioner's exclusive authority to adopt optional rating factors, contrary to Proposition 103.

---

[6] Sen. Bill 841 amended section 1861.02, subdivision (c), adding the following italicized language so that the statute now reads as follows: "The absence of prior automobile insurance coverage, in and of itself, shall not be a criterion for determining eligibility for a Good Driver Discount policy, or generally for automobile rates, premiums, or insurability. *However, notwithstanding subdivision (a), an insurer may use persistency of automobile insurance coverage with the insurer, an affiliate, or another insurer as an optional rating factor. The Legislature hereby finds and declares that it furthers the purpose of Proposition 103 to encourage competition among carriers so that coverage overall will be priced competitively. The Legislature further finds and declares that competition is furthered when insureds are able to claim a discount for regular purchases of insurance from any carrier offering this discount irrespective of whether or not the insured has previously purchased from a given carrier offering the discount. . . . Persistency shall be deemed to exist even if there is a lapse of coverage of up to two years due to an insured's absence from the state while in military service, and up to 90 days in the last five years for any other reason.*" (Stats. 2003, ch. 169, § 1.)

At the same time, the Legislature changed the first sentence in subdivision (a)(4) of section 1861.02 from "*Such* other factors *as* the commissioner may adopt by regulation that have a substantial relationship to the risk of loss" to read "*Those* other factors *that* the commissioner may adopt by regulation *and* that have a substantial relationship to the risk of loss." (Stats. 2003, ch. 169, § 1, italics added.) Under either wording, the Insurance Commissioner is empowered to establish optional rating factors having a substantial relationship to risk of loss, subject to the appropriate administrative process, including public access and participation and judicial review, as discussed, *post.*

## FACTS AND PROCEDURAL HISTORY

The Foundation for Taxpayer and Consumer Rights, Consumers Union of United States, Inc., Southern Christian Leadership Conference of Greater Los Angeles and National Council of La Raza (petitioners) brought a challenge to Sen. Bill 841 against Commissioner Garamendi and the State of California (State). The petition and complaint alleged that Sen. Bill 841 is an invalid and unconstitutional amendment of Proposition 103 because it thwarts rather than furthers the initiative's purposes, in violation of article II, section 10, subdivision (c) of the California Constitution and section 8, subdivision (b) of Proposition 103. Petitioners requested a writ of mandate prohibiting defendants from implementing or enforcing Sen. Bill 841. They also sought declaratory and injunctive relief on the same basis.

The State answered, requesting the court to deny the petition for writ of mandamus and to declare Sen. Bill 841 a valid amendment to Proposition 103. Commissioner Garamendi, however, joined with petitioners in asserting the legislative amendment is invalid under Proposition 103. Appellants Mercury Insurance Group (Mercury) and Association of California Insurance Companies (ACIC) intervened in support of Sen. Bill 841. Respondent Sam Donabedian intervened in opposition to Sen. Bill 841.[7]

After considering extensive briefing and argument, superior court Judge Dzintra I. Janavs found Sen. Bill 841 to be in conflict with the provisions of section 1861.02, subdivision (a)(4), which entrusts and empowers the Insurance Commissioner to promulgate optional rating factors by regulation, and section 1861.02, subdivision (c), which prohibits the absence of insurance "in and of itself" to be used as a rating factor for automobile insurance. The trial court reasoned that because section 1861.02, subdivision (c) was ambiguous, the Insurance Commissioner's interpretation of that section should be accorded deference. The court determined that California Code of Regulations, title 10, section 2632.5, subdivision (d)(11) constituted the most recent and thorough interpretation expressed by the Insurance Commissioner and such regulation should be accorded deference over other types of expression under *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha*). (See Cal. Code Regs., tit. 10, § 2632.5, subd. (d)(11)(B).)

The trial court found that the Legislature, in enacting Sen. Bill 841, had identified only a single purpose, competition. However, *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243 [48 Cal.Rptr.2d 12, 906 P.2d 1112]

---

[7] The appellants in this appeal are the State, Mercury and ACIC; the respondents are petitioners, Commissioner Garamendi and Donabedian.

(*Amwest*) held that Proposition 103 replaced the "Adam Smith free market-place" type of system for setting rates with a strictly regulated one. In the court's view, by focusing on competition alone, the Legislature had ignored the other purposes set forth in Proposition 103 as well as existing case law.

Accordingly, the trial court ruled that Bill 841 and its amendments to section 1861.02, subdivision (c) are "invalid and unconstitutional because they do not further Proposition 103's purposes and exceed the limited power to amend Proposition 103 which the voters granted to the Legislature in section 8(b) of Proposition 103, pursuant to article II, section 10(c) of the California Constitution."

The trial court entered a judgment granting the petition for writ of mandamus and issued peremptory writs of mandate directed to the Insurance Commissioner and the State. The court enjoined the Insurance Commissioner and the State from utilizing, enforcing or attempting to enforce Sen. Bill 841.[8]

The State, ACIC and Mercury timely appealed from the judgment.

## STANDARD OF REVIEW

■ Article II, section 10, subdivision (c) of the California Constitution provides that "[t]he Legislature . . . may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors *unless the initiative statute permits amendment or repeal without their approval*." (Italics added.) The constitutional limitation on the Legislature's power to amend initiative statutes is designed to " 'protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent.' [Citations.]" (*Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1484 [76 Cal.Rptr.2d 342] (*Project*).)

The power vested in the voters to decide whether the Legislature can amend or repeal initiative statutes " 'is absolute and includes the power to enable legislative amendment *subject to conditions attached by the voters*. [Citation.]' [Citation.]" (*Amwest, supra*, 11 Cal.4th at p. 1251.) Proposition 103 specifically provides: "The provisions of this act shall not be amended by the Legislature *except to further its purposes* . . . ." (Prop. 103, § 8, subd. (b); see Historical and Statutory Notes, 42A West's Ann. Ins. Code, *supra*, at

---

[8] The court denied petitioners' request for declaratory and injunctive relief as moot. It also found in favor of Donabedian and against Mercury and ACIC on their complaints in intervention.

p. 649, italics added.) The voters thereby made the Legislature's authority to amend Proposition 103 subject to the condition that any amendment must further the purposes of Proposition 103.

 We are guided by certain generally established principles. The determination of whether a program at issue serves a public purpose is generally vested in the Legislature. (*Amwest, supra,* 11 Cal.4th at p. 1252.) Though not binding on the courts, legislative findings are given great weight and will be upheld unless they are found to be unreasonable and arbitrary. (*Ibid.*) We must also enforce our Constitution and " 'may not lightly disregard or blink at . . . a clear constitutional mandate.' " (*Ibid.*) We presume the constitutionality of a legislative act, resolving all doubts in favor of the act, and must uphold the act unless a conflict with a provision of the state or federal Constitution is clear and unquestionable. (*Ibid.*) Because legislative power is " ' "practically absolute," ' " constitutional limitations on legislative power are strictly construed and may not be given effect as against the general power of the legislature, " ' *"unless such limitations clearly inhibit the act in question."* ' " (*Id.* at p. 1255, italics added.)

Applying these principles to Proposition 103, the parties do not dispute that the Legislature lacks the authority to amend the initiative under section 8, subdivision (b) except to further the purposes of the initiative. (*Amwest, supra,* 11 Cal.4th at p. 1252.) Although that limitation on the Legislature's power must be strictly construed, "it also must be given the effect the voters intended it to have." (*Id.* at pp. 1255–1256.) Adoption of a deferential standard of review might cause the drafters of future initiatives to withhold authority to amend those initiatives from the Legislature completely, a result that would diminish both the initiative and the legislative processes. (*Id.* at p. 1256.)

In line with *Amwest,* "starting with the presumption that the Legislature acted within its authority," we shall uphold the validity of Sen. Bill 841 "if, by any reasonable construction, it can be said that the statute furthers the purposes of Proposition 103" (*Amwest, supra,* 11 Cal.4th at p. 1256) unless the limitation imposed by section 8, subdivision (b) of Proposition 103 "clearly inhibits" Sen. Bill 841 (*Amwest,* at p. 1255).

 We apply the substantial evidence test to the trial court's factual findings. (*State Farm Mutual Automobile Ins. Co. v. Quackenbush* (1999) 77 Cal.App.4th 65, 71 [91 Cal.Rptr.2d 381]; see also *Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924, 932–933 [20 Cal.Rptr.3d 485].) Whether a legislative enactment furthers the purposes of Proposition 103, however, is a question of law. (*Amwest, supra,* 11 Cal.4th at p. 1254, citing *Davis v. County of Los Angeles* (1938) 12 Cal.2d 412, 423 [84 P.2d 1034].)

The issue before us, as in *Amwest*, is whether the Legislature exceeded its authority in enacting Sen. Bill 841 to amend section 1861.02. (*Amwest, supra,* 11 Cal.4th at p. 1253.)

## DISCUSSION

Two prior attempts by the Legislature to amend Proposition 103 have been invalidated by the courts because they did not "further [the] purposes" of the initiative, as section 8, subdivision (b) requires. (See *Amwest, supra,* 11 Cal.4th at p. 1265 [purposes of Prop. 103 not furthered by exempting surety insurance]; *Project, supra,* 64 Cal.App.4th at p. 1494 [purposes of Prop. 103 not furthered by reducing insurers' obligation to refund excess premiums].)

We hold that Sen. Bill 841 does not further the purposes of Proposition 103 and hence is an invalid exercise of the power granted the Legislature by the initiative. Sen. Bill 841 also is an improper infringement upon the Insurance Commissioner's power to regulate rates and premiums granted by the voters.

A. *Sen. Bill 841 Does Not Further the Purposes of Proposition 103, and Therefore Its Enactment Was an Act Beyond the Legislature's Powers*

As enacted by the voters, one of the fundamental purposes of Proposition 103 was the elimination of discrimination against previously uninsured drivers and the promotion of "fair, available, and affordable" automobile insurance so that the previously uninsured could enter the ranks of the insured. Specifically, subdivision (c) of section 1861.02 provides that "The absence of prior automobile insurance coverage, in and of itself, shall not be a criterion for determining eligibility for a Good Driver Discount policy, or generally for automobile rates, premiums, or insurability." Sen. Bill 841 facially conflicts with that provision by adding the proviso that "an insurer *may* use persistency of automobile insurance coverage with the insurer, an affiliate, *or another insurer* as an optional rating factor." (§ 1861.02, subd. (c), italics added.)

By allowing insurers to grant a discount on the basis of whether an applicant was previously insured by any insurer, Sen. Bill 841 in effect excludes only the previously uninsured from the benefit of the discount. Based on the showing below, Sen. Bill 841 would permit insurers to surcharge previously uninsured drivers to fund discounts for drivers with prior or persistent insurance. Whereas the voters had *prohibited* insurers from using the absence of prior insurance coverage as a premium criterion to promote fairness for previously uninsured drivers now required to purchase insurance under California law, Sen. Bill 841 *authorizes* insurers to use that criterion to determine whether a policyholder's premium will be discounted or surcharged.

1. *The Evidence Before the Trial Court Showed the Disproportionate Impact of Sen. Bill 841 on the Previously Uninsured*

In the court below, the Insurance Commissioner proffered the declaration of Eric Johnson, an actuary with the California Department of Insurance, who explained the principle of "revenue neutrality" as respects the "persistency of automobile insurance coverage with the insurer, an affiliate, or another insurer" under Sen. Bill 841. Johnson opined that, "[f]rom an actuarial perspective, there is no difference between 'the absence of prior automobile insurance coverage' [as set forth in Proposition 103] and the lack of 'persistency of automobile insurance coverage with the insurer, an affiliate, or another insurer' [as set forth in Sen. Bill 841]." Specifically, "[b]oth of these phrases identically divide a pool of possible policyholders into two groups. If an insurer assigns a persistency discount, based upon the policyholder's previous coverage, or lack of coverage, with another insurer, then the insurer will be using the absence of prior insurance to determine automobile rates for those policyholders that lack prior insurance."

Under the principle of revenue neutrality, Johnson stated, "[w]hen a particular policyholder represents a greater or lesser risk for purposes of insurance, this greater or lesser risk may be captured mathematically through the application of the rating factors to the particular policyholder. [¶] . . . The premiums for policyholders who, because of their characteristics, do not qualify for a particular discount must be *surcharged* in an amount *equal to the total of the discounts* given to the policyholders that qualified for the discount." (Italics added.)

Johnson illustrated that principle as follows: "Assume that there is a hypothetical insurer with 100 policyholders. Assume, further, that 80% of the policyholders qualify for a particular discount while the other 20% do not, due to the manner in which each policyholder's characteristics affect the influence of a particular rating factor. Assume that the insurer must collect $100,000 in total premium to cover the losses and expenses of the pool of policyholders, while still making a reasonable profit. If every policyholder had the same characteristics, each policyholder could be charged the base rate of $1,000, and this would guarantee that the insurer will collect $100,000. ($1,000 X 100 policyholders = $100,000)." If one assumes, however, that 80 policyholders in the pool have five years of continuous insurance and thereby receive a 10 percent discount, the insurer will only collect $900 from each of the 80 policyholders ($1,000 - 10% = $900), or a total of $72,000 from the 80 policyholders.

According to Johnson, because insurance is a "zero sum" system, under his illustration the insurer still must collect a total of $100,000 from its policyholders to cover the losses and expenses of the pool of policyholders. The

insurer therefore must collect $28,000 from the remaining policyholders who did not qualify for the "continuous insurance" discount. Assuming each of the remaining 20 policyholders has the same characteristics and there are no other rating factors, then each will be charged $1,400 (20 policyholders X $1,400 = $28,000). This would result in a surcharge equal to a 40 percent increase in premium for the 20 policyholders who do not qualify for the "continuous insurance" discount. The greater the proportion of policyholders that receive the discount, the greater the surcharge will be for the policyholders that do not receive the discount.

In the example given, according to Johnson, "because four times as many policyholders receive the discount as receive the surcharge (80 policyholders v. 20), the surcharge must be four times as great as the discount (40% v. 10%)."[9]

The trial court also received further evidence from J. Robert Hunter,[10] who concurred with Johnson that actuarially there is no difference between " 'the absence of prior automobile insurance coverage' " and the lack of " 'persistency of automobile insurance coverage with another insurer.' "

Hunter further noted: "If insureds representing one half of the premium get a 10 percent discount, the base rate must be raised by 5 percent for all insureds for the statewide rate level to be achieved. Those with no discount will pay 5 percent more than they would have had the discount not been offered (and those with a 10 percent discount will actually only save 5 percent). It is clear that those with no prior insurance pay a surcharge under Sen. Bill 841 because they have no prior insurance."

Hunter observed that "[t]he cost of insurance is a key factor in why people drive without insurance. The size of the uninsured market will vary based upon the 'entry fee' (i.e., premium) charged to a driver considering entering the insurance system. . . . To the extent that those without prior insurance from another insurer must pay more—as they must—to make up for lost revenue from the statewide rate level because of the discounts to those with prior insurance from another insurer, the number of uninsureds becoming insured will be adversely affected. This will also mean, therefore, that *insured* drivers will pay more, through increased rates for their uninsured-motorist coverage, compared to what the uninsured-motorist premium would be if there were fewer uninsured motorists because no-priors were not surcharged."

---

[9] In its opening brief, ACIC acknowledges a "necessary" effect of any rating factor is that the collective premium discount conferred on some policyholders must be offset by an equal collective surcharge on others.

[10] Hunter had over 40 years of actuary experience, including service as Insurance Commissioner of Texas and as a member of the executive committee of the National Association of Insurance Commissioners.

Hunter also cited a 1998 Department of Insurance study showing that 87 percent of uninsured motorists are good drivers under Proposition 103, only 20 percent had any tickets, 55 percent were employed either full time or part time, 13 percent were unemployed but looking for work, 71 percent of those reporting income had incomes under $20,000 per year and 66 percent were Hispanic, Black, Asian or multicultural. (Cal. Dept. of Ins., California's Uninsured (Sept. 28, 1998) p. 19.)

## 2. *Proposition 103's Elimination of Competition as a Fundamental Purpose*

In his concurring opinion in *King v. Meese*, Justice Broussard noted two practices were widespread in the insurance industry prior to Proposition 103's passage: prohibitively high insurance rates for the previously uninsured driver, and the exclusion of uninsured drivers from the insurance market altogether simply because they were not previously insured. (See *King v. Meese* (1987) 43 Cal.3d 1217, 1237–1240 [240 Cal.Rptr. 829, 743 P.2d 889] (conc. opn. of Broussard, J.).) Such practices arbitrarily penalized uninsured motorists, leaving many unable to comply with California's mandatory insurance laws. (See *id.* at pp. 1245–1246.)

■ In subdivision (c) of section 1861.02, the voters extended special protection to such drivers by providing that the absence of prior insurance, in and of itself, does not warrant such unfair discrimination. Proposition 103 addressed the uninsured motorist issue by expressly forbidding insurers from employing "the absence of prior automobile insurance coverage" as a criterion for qualification for the Good Driver Discount or for rates, premiums or insurability. Section 1 of Proposition 103 specifically finds that "[e]normous increases in the cost of insurance have made it both unaffordable and unavailable to millions of Californians." (See Historical and Statutory Notes, 42A West's Ann. Ins. Code, *supra*, at p. 649.) The voters proclaimed that "[t]he existing laws inadequately protect consumers and allow insurance companies to charge excessive, unjustified and arbitrary rates," and, "[t]herefore, the People of California declare that insurance reform is necessary." (*Ibid.*)

The relevant question here is whether Sen. Bill 841 furthers the purposes of Proposition 103 underlying subdivision (c) of section 1861.02: to protect a specific group of drivers (those without prior automobile insurance coverage) from insurers' "arbitrary practices" and to prohibit the use of "absence of prior automobile insurance, in and of itself," as a rating factor. Sen. Bill 841 does not further those purposes but rather by definition authorizes a discount only to drivers with a history of continuous, or virtually continuous, insur-

ance coverage. Mercury concedes that "uninsured persons will always be excluded" from the premium discount that Sen. Bill 841's prior-insurance rating factor accomplishes. This runs contrary to the declared purposes of Proposition 103 and contravenes the voters' directive against insurance rates that are "excessive, inadequate [or] unfairly discriminatory." (§ 1861.05, subd. (a).)

Mercury argues that no case has held eliminating discrimination against the previously uninsured is a "purpose" of Proposition 103. However, the plain meaning of section 1861.02, subdivision (c) prohibits insurers from using the absence of prior insurance, in and of itself, as a criterion in determining eligibility for the Good Driver Discount or generally for automobile rates, premiums, or insurability. (*Donabedian, supra,* 116 Cal.App.4th at p. 977.) In prohibiting use of the absence of prior insurance to discriminate against the uninsured, section 1861.02, subdivision (c) itself manifests the voters' intent to eliminate such discrimination. The voters, moreover, enacted Proposition 103 "to protect consumers from arbitrary insurance rates and practices" and "to ensure that insurance is fair, available, and affordable for all Californians." (Prop. 103, § 2; see Historical and Statutory Notes, 42A West's Ann. Ins. Code, *supra,* at p. 649.) By specifically focusing on eliminating discrimination against the previously uninsured in section 1861.02, subdivision (c), the voters made clear that a fundamental purpose of Proposition 103 is to include and extend the protections of Proposition 103 in particular to, and to prohibit discrimination against, the previously uninsured.

Mercury concedes that "[a] valid amendment to Proposition 103 must not only further its purposes in general, but it cannot do violence to specific provisions of Proposition 103. So even if an amendment can be shown to further its purposes, it may nonetheless be invalid if it violates a specific primary mandate." We find Sen. Bill 841 does violate this primary mandate of Proposition 103 and, accordingly, it cannot "reasonably" be found to further the purposes of Proposition 103.

Mercury claims that under Sen. Bill 841 "the rates of people who do not qualify for persistency discounts aren't determined by 'the[ir] absence of prior automobile insurance coverage, in and of itself.' Their rates, instead, are determined by their *failure to maintain* insurance during the same period their otherwise similarly situated peers *did maintain* insurance . . . ." This is a distinction without a difference: a "failure to maintain" insurance necessarily requires that one have no insurance, which is the same as an "absence" of prior insurance.

■ ACIC argues that nowhere in *Amwest* does the Supreme Court hold that a competitive insurance market is subsidiary to the other stated purposes of Proposition 103 in evaluating the validity of a legislative amendment to Proposition 103. We disagree. Proposition 103 provides that "[i]n considering whether a rate is excessive, inadequate or unfairly discriminatory, *no consideration* shall be given to the degree of competition . . . ." (§ 1861.05, subd. (a), italics added.) *Amwest* specifically called attention to this provision in discussing the "major purposes" of the initiative. (*Amwest, supra,* 11 Cal.4th at p. 1259.) By providing that "no consideration" be given to the degree of competition in assessing whether a rate of insurance is "excessive, inadequate or unfairly discriminatory," the voters gave no priority to a "competitive market" in such determination.

■ An amendment to Proposition 103 is valid only if, "by any reasonable construction, it can be said that the statute furthers the purposes of Proposition 103." (*Amwest, supra,* 11 Cal.4th at p. 1256; see also *Project, supra,* 64 Cal.App.4th at p. 1490.) Mercury admits that even under the "any reasonable construction" standard, *Amwest* found the legislative amendment at issue there did *not* further the purposes of Proposition 103 despite the Legislature's declaration. (*Amwest, supra,* at pp. 1259, 1261.) The Legislature's attempt at undermining Proposition 103 by similarly labeling its amendment to section 1861.02, subdivision (c), as one "further[ing] the purpose[s] of Proposition 103" likewise is unavailing. We hold Sen. Bill 841 does *not* further the purposes of Proposition 103 because it facially contradicts the voters' intent that "[t]he absence of prior automobile insurance coverage, in and of itself, shall not be a criterion for determining eligibility for a Good Driver Discount policy, or generally for automobile rates, premiums, or insurability." (§ 1861.02, subd. (c).)

■ The Legislature cannot simply in the guise of amending Proposition 103 undercut and undermine a fundamental purpose of Proposition 103, even while professing that the amendment "furthers" Proposition 103. The power of the Legislature may be "practically absolute," but that power must yield when the limitation of the Legislature's authority clearly inhibits its action. (*Amwest, supra,* 11 Cal.4th at p. 1255.) Since Sen. Bill 841 flies in the face of the initiative's purposes, it exceeds the Legislature's authority.

B. *Because Sen. Bill 841 Divests the Insurance Commissioner of Discretion to Set Optional Rating Factors Regarding Persistency, It Also Violates Subdivision (a)(4) of Section 1861.02*

██ The Insurance Commissioner's present regulations allow an insurer to offer a persistency discount solely to existing customers of itself or an affiliate. In enacting Sen. Bill 841, the Legislature sought to override the Insurance Commissioner's authority to set rates and premiums for automobile insurance. In section 1861.02, subdivision (a), the voters mandated the use of three specific rating factors to determine automobile insurance premiums and delegated the exclusive authority to approve "optional rating factors" to the elected Insurance Commissioner. In providing for an elected rather than appointed commissioner, the voters made the Insurance Commissioner responsive to the voters, not the Legislature. (*Project, supra*, 64 Cal.App.4th at p. 1486.) Further, the voters limited the Insurance Commissioner's authority both substantively and procedurally. Substantively, the Insurance Commissioner may adopt only those optional rating factors having a "substantial relationship to the risk of loss." (§ 1861.02, subd. (a)(4).) Procedurally, the Insurance Commissioner may do so only in the context of a formal rulemaking proceeding with established rights of public participation and judicial review. (*Ibid.*) Under Proposition 103, therefore, it is the Insurance Commissioner rather than the Legislature that is vested with ratemaking authority subject to the appropriate ratemaking process.

██ By subjecting insurance premium-setting practices to an open, evidence-driven regulatory process, the voters both replaced the former laissez-faire competition framework with one calculated to prevent arbitrary practices and ensured their right of access and participation in the regulatory process. As our Supreme Court has observed, "questions involving insurance rate making pose issues for which specialized agency fact-finding and expertise is needed in order to both resolve complex factual questions and provide a record for subsequent judicial review." (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 397 [6 Cal.Rptr.2d 487, 826 P.2d 730].)

██ Two insurance commissioners previously have declared that defining "persistency" in the manner of Sen. Bill 841 would violate Proposition 103. In January 2002, Commissioner Low opined that " 'to authorize a credit to persons who have switched insurance carriers, but have been continuously insured,' " would necessarily require insurers " 'to consider a consumer's prior insurance, or lack thereof,' " in violation of Proposition 103. (*Donabedian, supra*, 116 Cal.App.4th at pp. 974–975.) Commissioner Low adopted the regulation on persistency that provides an insurer "shall not apply a persistency credit for a new policy issued to an individual, unless that individual is currently insured" and shall not "apply persistency, at any time, when based in whole or in part upon

automobile insurance coverage provided by a non-affiliated insurer." (Cal. Code Regs., tit. 10, § 2632.5, subd. (d)(11)(B).) Commissioner Garamendi concurred in this interpretation of Proposition 103, as noted in this litigation. Great weight should be given to an agency's construction of a rule or regulation it enforces. (*Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1214–1215 [103 Cal.Rptr.2d 75] [" 'agencies are often immersed in administering a particular statute,' " and " '[s]uch specialization gives those agencies an intimate knowledge of the problems dealt with in the statute and the various administrative consequences arising from particular interpretations' "]; see also *Yamaha, supra*, 19 Cal.4th at p. 12.)

Mercury cites several instances where the Legislature purportedly enacted statutes to "amend or refine" Proposition 103 with no apparent challenge to their validity. Mercury also relies on an instance when the Legislature purported to modify one of the Insurance Commissioner's optional rating factors with his active support. We are concerned here, however, with the validity and impact of Sen. Bill 841, not other statutes, and the Insurance Commissioner's actions regarding this statute, not his actions concerning other statutes.

Mercury also relies on the Department of Insurance's past approval of or purported preference for rates that incorporated discounts for applicants who have maintained insurance with other insurers. It is undisputed, however, that no prior regulation defined "persistency," and therefore it was not inconsistent for the Insurance Commissioner to promulgate a regulation, after formal hearings under his rulemaking authority, to define "persistency" for the first time and limit such discounts to current customers of the insurer or affiliates.

The trial court correctly ruled that Sen. Bill 841 is an invalid amendment to Proposition 103.[11]

---

[11] Since we hold Sen. Bill 841 does not further the purposes of Proposition 103 and is an excess of the amendatory powers the voters granted to the Legislature, we need not reach the issue whether Sen. Bill 841 is unconstitutional. (*Project, supra*, 64 Cal.App.4th at p. 1495; see also *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1105 [29 Cal.Rptr.3d 249] [court commonly construes statutes, when reasonable, "to avoid difficult constitutional questions"].)

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

A petition for a rehearing was denied October 18, 2005, and on October 27, 2005, the opinion was modified to read as printed above. The petition of appellant Mercury Insurance Group for review by the Supreme Court was denied January 4, 2006.