[No. A122920. First Dist., Div. One. Nov. 5, 2009.]

CLIFF GARDNER et al., Plaintiffs and Respondents, v.
ARNOLD SCHWARZENEGGER et al., Defendants and Appellants.

COUNSEL

Edmund G. Brown, Jr., Attorney General, Jonathan K. Renner, Assistant Attorney General, Douglas J. Woods and Kathleen A. Lynch, Deputy Attorneys General, for Defendants and Appellants.

Altshuler Berzon, Jonathan Weissglass, Stacey M. Leyton; Drug Policy Alliance, Daniel N. Abrahamson, Theshia Naidoo and Tamar Todd for Plaintiffs and Respondents.

Francisco J. Silva and Long X. Do for California Medical Association and California Psychiatric Association as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

**MARCHIANO, P. J.**—Defendants Governor Arnold Schwarzenegger, Attorney General Edmund G. Brown, Jr., and Secretary of State Debra Bowen appeal from a judgment enjoining enforcement of Senate Bill No. 1137 (2005–2006 Reg. Sess.) sections 1 through 12 (Stats. 2006, ch. 63, §§ 1–12; hereafter Senate Bill 1137), that sought to amend the Substance Abuse and Crime Prevention Act of 2000 (hereafter Proposition 36). The issues are whether the provisions of Senate Bill 1137 challenged by plaintiffs Cliff Gardner, Drug Policy Alliance, and California Society of Addiction Medicine further the purposes of Proposition 36, and, if not, whether Senate Bill 1137 can be submitted to the voters for approval. We hold that certain of the challenged sections of Senate Bill 1137 cannot reasonably be construed to further the purposes of Proposition 36, and that Senate Bill 1137's provision for a popular vote, if any part of Senate Bill 1137 is invalidated, is itself invalid. Consistent with these conclusions, we affirm the judgment.

## I.  BACKGROUND

A.  *Proposition 36*

Proposition 36, passed by the voters in the November 2000 general election, generally provides that those convicted of drug possession offenses are initially to receive probation with drug treatment, rather than incarceration. (Pen. Code, § 1210.1, subd. (a).)[1] "Drug treatment" is defined to exclude drug treatment programs in a prison or jail facility. (§ 1210, subd. (b).)

---

[1] Unless otherwise indicated, subsequent statutory references are to the Penal Code. Penal Code provisions of Proposition 36 are cited by section number; Penal Code provisions of Senate Bill 1137 are cited by "amended" section number.

Proponents of Proposition 36 argued in the Voter Information Guide to the election: "The war on drugs has failed. Nonviolent drug users are overcrowding our jails. Violent criminals are being released early. Drug treatment programs are rarely available. We pay $25,000 annually for prisoners when treatment costs only $4,000. Expanded treatment programs will reduce crime, save lives, and save taxpayers hundreds of millions." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) summary of Prop. 36, p. 3 (Guide).) Opponents argued among other things that the proposition would "tie[] the hands of judges" and "cripple[] legitimate treatment." (Guide, *supra*, rebuttal to argument in favor of Prop. 36, p. 26; *id.*, summary of Prop. 36, p. 3.)

In Proposition 36, the electorate found and declared: "(a) Substance abuse treatment is a proven public safety and health measure. Nonviolent, drug-dependent criminal offenders who receive drug treatment are much less likely to abuse drugs and commit future crimes, and are likelier to live healthier, more stable and more productive lives. [¶] (b) Community safety and health are promoted, and taxpayer dollars are saved, when nonviolent persons convicted of drug possession or drug use are provided appropriate community-based treatment instead of incarceration." (Guide, *supra*, text of proposed law, § 2, p. 66.)

Proposition 36's express purposes were: "(a) To divert from incarceration into community-based substance abuse treatment programs nonviolent defendants, probationers and parolees charged with simple drug possession or drug use offenses; [¶] (b) To halt the wasteful expenditure of hundreds of millions of dollars each year on the incarceration—and reincarceration—of nonviolent drug users who would be better served by community-based treatment; and [¶] (c) To enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies." (Guide, *supra*, text of proposed law, § 3, p. 66.)

Proposition 36 further provided: "This act may be amended only by a roll call vote of two thirds of the membership of both houses of the Legislature. All amendments to this act shall be to further the act and shall be consistent with its purposes." (Guide, *supra*, text of proposed law, § 9, p. 69.)

B.  *Senate Bill 1137*

Senate Bill 1137 was passed by the Legislature on June 27, 2006, as an urgency measure (Sen. Bill 1137, § 12), and signed by the Governor on July

12, 2006. It was entitled: "An act to amend Sections 11999.6, 11999.9, 11999.10, and 11999.12 of the Health and Safety Code, and to amend Sections 1210, 1210.1, and 3063.1 of the Penal Code, relating to drug treatment, and declaring the urgency thereof, to take effect immediately." The provisions of Senate Bill 1137 alleged to be inconsistent with the purposes of Proposition 36, detailed below, permit incarceration of defendants who violate probation in circumstances where incarceration is prohibited by Proposition 36, and narrow eligibility for Proposition 36 diversion.

Senate Bill 1137 was derived from Senate Bill No. 803 (2005–2006 Reg. Sess.) (Senate Bill 803), which was introduced in February 2005. An April 2005 Senate Committee on Public Safety analysis of Senate Bill 803 stated that "[t]he most important source of conflict over SACPA [Substance Abuse and Crime Prevention Act of 2000] is the prohibition on any jail sanctions until probation is revoked." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 803 (2005–2006 Reg. Sess.) Apr. 19, 2005, p. 18.) "[T]he most contentious issue—perhaps the overriding issue—is the use of short-term incarceration (flash incarceration) sanctions for probation violations while a person participates in the act." (*Id.* at p. 25.) At this same time, the Legislative Counsel opined that "[l]egislation that would authorize a sentence of incarceration for a first, second, or third drug-related probation violation, if enacted, would constitute an amendment of Proposition 36 that would not both further that initiative statute and be consistent with its purposes. Therefore, the legislation could not take effect without voter approval pursuant to subdivision (c) of Section 10 of Article II of the California Constitution."[2] (Ops. Cal. Legis. Counsel, No. 0508397 (Apr. 18, 2005) Substance Abuse and Crime Prevention Act of 2000 (Proposition 36): Permissible Amendments: Incarceration: Funding for Nontreatment Costs, p. 1.) Senate Bill 803 had not cleared the Assembly Public Safety Committee when its substance was added to Senate Bill 1137 on June 26, 2006, the day before Senate Bill 1137's passage; prior to that time, Senate Bill 1137 had been a one-sentence budget trailer bill.

Senate Bill 1137 included the following findings and declarations:

"[¶] . . . [¶] (c) Each year following the implementation of the act the Department of Alcohol and Drug Programs (hereinafter the department) was

---

[2] This section of the Constitution provides in relevant part that the Legislature "may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval."

required and did in fact conduct a study to evaluate the effectiveness and financial impact of the programs which were funded pursuant to the act. The studies have focused on the implementation process, participant demographics and treatment completion rates as well as other impacts and issues the department identified. Reports were submitted to the Legislature by the department.

"(d) In addition, the department contracted, as required by the act, with a public university, the University of California at Los Angeles (hereinafter UCLA) to evaluate the effectiveness and financial impact of the programs which were funded pursuant to the requirements of this act and to report findings that were in fact forwarded to the Legislature by the department.

"(e) The UCLA evaluations have found that approximately 30 percent of referred SACPA offenders do not enter treatment. . . .

"(f) The UCLA evaluations have found that 34 percent of those who do in fact enter treatment complete that treatment. This completion rate, as well as retention rates, can be improved through the enhancement of compliance with treatment . . . .

"(g) SACPA does not specifically address the use of short periods of jail time as a motivational tool to hold SACPA offenders accountable to enter and stay in treatment. Studies have reported that drug court clients were more likely to enter treatment, remained in treatment significantly longer, and engaged in significantly less drug use when they received swift and sure sanctions and rewards, including the possibility of brief periods of jail time during the course of treatment. Therefore, sanctions including short periods of jail time for relapsing, problematic, or recalcitrant offenders, on a showing of need after consideration of important treatment and other factors, should be available, not as a substitute for treatment but as a tool to motivate and hold offenders accountable. . . . [¶] . . . [¶]

"(i) The UCLA evaluations also speak to the high cost in terms of arrests and convictions of violent crimes, property crimes, and sex crimes of those presently eligible defendants who have five or more convictions in the 30-month period prior to their SACPA eligible arrests in comparison to the typical SACPA offender, and recommend that the Legislature may wish to consider possible changes as to the eligibility of these offenders who UCLA found comprise 1.6 percent of the total number of offenders eligible for SACPA, yet had postconviction crime costs that were 10 times higher than

the costs for the typical or median SACPA offender during the 30-month followup study period. [¶] . . . [¶]" (Sen. Bill 1137, § 1.)

The Legislature further found and declared in section 10 of Senate Bill 1137 that "the provisions of this act are consistent with the purposes of the Substance Abuse and Crime Prevention Act of 2000." Section 9 of Senate Bill 1137 directed: "If any provision of this bill is found to be invalid, the entire legislative measure shall be submitted to the voters at the next statewide election."

## C. *Procedural History of the Case*

This suit was filed on July 12, 2006, the day the Governor signed Senate Bill 1137.[3] The court issued a temporary restraining order the next day against enforcement of Senate Bill 1137, followed by a preliminary injunction in September 2006. Plaintiffs' first amended complaint for injunctive and declaratory relief, and petition for writ of mandate, alleged that Senate Bill 1137 amendments detailed below to Proposition 36 violated article II, section 10, subdivision (c) of the California Constitution because they did not further the proposition and were inconsistent with its purposes. Plaintiffs alleged that Senate Bill 1137's provision for a popular vote on the bill, if any part of it was found to be invalid, was also unconstitutional on multiple grounds. (Cal. Const., art. II, § 10, subd. (c) [restriction on amendment of initiative]; *id.*, art. II, § 9 [requirements for referendums]; *id.*, art. IV, § 9 [single subject rule, subject must be expressed in statute's title].)

The trial court granted plaintiffs' motion for summary judgment, finding that "[t]he incarceration provisions of Senate Bill 1137 are flatly inconsistent with the purposes approved by the voters, as are the changes to those eligible for diversion under the initiative." The court found the popular vote provision of section 9 of Senate Bill 1137 invalid under the terms of that section, which "ma[de] clear that the Legislature intended that the provisions of the legislation not be severable, so that invalidation of one part invalidates the entire legislation." The court entered judgment declaring Senate Bill 1137 "invalid in its entirety," and enjoining its enforcement.

---

[3] Additional named defendants in the suit, Alameda County District Attorney Thomas J. Orloff, and Alameda County Sheriff Charles C. Plummer, have not appealed from the judgment and are not parties to this appeal.

## II.  DISCUSSION

A.  *Constitutionality of the Challenged Amendments to Proposition 36*

### (1)  *Scope of Review*

The standards governing our analysis are set forth in cases that have considered attempted legislative amendments to Proposition 103, the far-reaching insurance rate initiative, which, like Proposition 36, permitted amendment by the Legislature only "to further its purposes." (See *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1249 [48 Cal.Rptr.2d 12, 906 P.2d 1112] (*Amwest*).)

In *Amwest, supra,* 11 Cal.4th at page 1251, the proponent of the legislation argued that the court "should adopt a deferential standard of review in determining whether the enactment . . . furthers the purposes of Proposition 103." The court rejected that argument, and held that the proposition's limitation on legislative authority "must be given the effect the voters intended it to have. Adoption of the standard of review proposed by Amwest might well have the ironic and unfortunate consequence of causing the drafters of future initiatives to hesitate to grant even a limited authority to the Legislature to amend those initiatives . . . a result [that] would diminish both the initiative process and the legislative process." (*Id.* at pp. 1255–1256.) The court must exercise "effective judicial review," and determine whether, "by any reasonable construction, it can be said that the statute furthers the purposes of [the initiative]." (*Id.* at p. 1256.) Because this determination is a question of law (*Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1354, 1365 [34 Cal.Rptr.3d 354] (*Foundation*)), the trial court's decision on the matter is subject to our independent review.

In identifying the purposes of an initiative, we examine the initiative as a whole, and are guided by, but not limited to, its general statements of purpose. (*Amwest, supra,* 11 Cal.4th at p. 1257.) We must give effect to an initiative's specific language, as well as its major and fundamental purposes. (*Id.* at pp. 1259, 1260 [identifying initiative's "major purposes"; argument that initiative had "a narrower scope than would follow from its broad language" rejected " 'in view of the particular language' " used]; *Foundation, supra,* 132 Cal.App.4th at p. 1370 [citing initiative's "fundamental purpose"; amendment must not " 'violate[] a specific primary mandate' " or " 'do violence to specific provisions' " of the initiative].) Although legislative findings " 'are given great weight' " (*Amwest,* 11 Cal.4th at p. 1252), the issue is not whether the legislation "furthers the public good, but rather whether [it] furthers the purposes of [the initiative]" (*id.* at p. 1265).

(2)   *Amendments at Issue*

(a)   *Incarceration for Drug-related Probation Violations*

■   Proposition 36 provides that a defendant on Proposition 36 probation may be incarcerated upon revocation of probation (§ 1210.1, subd. (e)(1)), but that the defendant cannot have his or her probation revoked for a first or second drug-related violation of probation unless the court finds that the defendant poses a danger to the safety of others or is unamenable to drug treatment; without such a finding, the only consequence is modification of the probationer's drug treatment plan. (§ 1210.1, subd. (e)(3)(A) [upon a first drug-related violation, probation may be revoked if defendant is a danger to others; if probation is not revoked, the court "may intensify or alter the drug treatment plan"]; § 1210.1, subd. (e)(3)(B) [upon a second drug-related violation, probation may be revoked if defendant is a danger to others or unamenable to treatment; if probation is not revoked, treatment plan may be intensified or altered].) Senate Bill 1137 adds language to section 1210.1 permitting the court, upon a first drug-related probation violation that does not involve the recent use of drugs, such as failure to comply with treatment or to report for drug testing, to impose up to 48 hours of custody in jail "as a tool to enhance treatment compliance." (Amended § 1210.1, subd. (f)(3)(A).)[4] If the drug-related violation involves recent drug use, and no bed is immediately available at a licensed detoxification or residential treatment facility, Senate Bill 1137 permits the court to order the defendant confined in county jail for detoxification for up to 10 days. (Amended § 1210.1, subd. (f)(3)(A).)[5] Upon a second drug-related probation violation that does not involve the recent

---

[4] This provision of Senate Bill 1137 states that: "[I]f the violation does not involve the recent use of drugs as a circumstance of the violation, including, but not limited to, violations relating to failure to appear at treatment or court, noncompliance with treatment, and failure to report for drug testing, the court may impose sanctions including jail sanctions that may not exceed 48 hours of continuous custody as a tool to enhance treatment compliance and impose other changes in the terms and conditions of probation. The court shall consider, among other factors, the seriousness of the violation, previous treatment compliance, employment, education, vocational training, medical conditions, medical treatment, including narcotics replacement treatment, and including the opinion of the defendant's licensed and treating physician if immediately available and presented at the hearing, child support obligations, and family responsibilities. The court shall consider additional conditions of probation, which may include, but are not limited to, community service and supervised work programs." (Amended § 1210.1, subd. (f)(3)(A).)

[5] This provision of Senate Bill 1137 states: "If one of the circumstances of the violation involves recent drug use, as well as other circumstances of violation, and the circumstance of recent drug use is demonstrated to the court by satisfactory evidence and a finding made on the record, the court may, after receiving input from treatment and probation, if available, direct the defendant to enter a licensed detoxification or residential treatment facility, and if there is no bed immediately available in such a facility, the court may order that the defendant be confined in a county jail for detoxification purposes only, if the jail offers detoxification services, for a period not to exceed 10 days. The detoxification services must provide narcotic

use of drugs, the court may sanction the defendant with up to 120 hours in jail; if recent drug use is involved, the court may order up to 10 days of confinement in jail for detoxification. (Amended § 1210.1, subd. (f)(3)(B).)[6]

(b)   *Incarceration for Non-drug-related Probation Violations*

■   Proposition 36 permits the court to revoke a defendant's probation if a non-drug-related probation violation is proved. (§ 1210.1, subd. (e)(2).) Under Senate Bill 1137, the court may remand the defendant for up to 30 days if the state moves to revoke probation for a non-drug-related probation violation. (Amended § 1201.1, subd. (f)(2).)[7] If the court reinstates the defendant on probation, it may impose up to 30 more days in jail as "a tool to enhance treatment compliance." (Amended § 1210.1, subd. (f)(2).)[8]

(c)   *Eligibility for Proposition 36 Diversion*

■   Proposition 36 excludes certain defendants who had previously been convicted of serious or violent felonies. (§ 1210.1, subd. (b)(1).)[9] Senate Bill 1137 retained that exclusion, and added provisions that permit a court, upon making certain findings, also to exclude any defendant who had served three

replacement therapy for those defendants presently actually receiving narcotic replacement therapy." (Amended § 1210.1, subd. (f)(3)(A).)

[6] Proposition 36 and Senate Bill 1137 have parallel provisions, which need not be separately discussed, for drug-related probation violations committed by defendants who were on probation for nonviolent drug possession offenses when the proposition took effect. (Pen. Code, § 1210.1, subd. (e)(3)(D), (E); amended § 1210.1, subd. (f)(3)(D), (E).)

[7] This portion of Senate Bill 1137 provides: "If a defendant receives probation under subdivision (a), and violates that probation either by committing an offense that is not a nonviolent drug possession offense, or by violating a non-drug-related condition of probation, and the state moves to revoke probation, the court may remand the defendant for a period not exceeding 30 days during which time the court may receive input from treatment, probation, the state, and the defendant, and the court may conduct further hearings [as] it deems appropriate to determine whether or not probation should be reinstated under this section." (Amended § 1210.1, subd. (f)(2).)

[8] This portion of Senate Bill 1137 provides: "If the court reinstates the defendant on probation, the court may, after receiving input from the treatment provider and probation, if available, intensify or alter the treatment plan under subdivision (a), and impose sanctions, including jail sanctions not exceeding 30 days, [as] a tool to enhance treatment compliance." (Amended § 1210.1, subd. (f)(2).)

[9] Under Proposition 36, section 1210.1, subdivision (b)(1) excludes: "Any defendant who previously has been convicted of one or more serious or violent felonies in violation of subdivision (c) of Section 667.5 or Section 1192.7, unless the nonviolent drug possession offense occurred after a period of five years in which the defendant remained free of both prison custody and the commission of an offense that results in (A) a felony conviction other than a nonviolent drug possession offense, or (B) a misdemeanor conviction involving physical injury or the threat of physical injury to another person."

prior prison terms for non-drug-related felonies, or had been convicted of five misdemeanors or felonies within the preceding 30 months.[10]

■ Proposition 36 excludes defendants who unlawfully possess or are under the influence of specified controlled substances while "using a firearm." (§ 1210.1, subd. (b)(3).) Senate Bill 1137 expands the exclusion to encompass defendants who unlawfully possess or are under the influence of specified controlled substances while "armed with a deadly weapon, with the intent to use the same as a deadly weapon." (Amended § 1210.1, subd. (b)(3).)[11]

(3) *Analysis*

■ We agree with the trial court and the Legislative Counsel that provisions of Senate Bill 1137 allowing incarceration for drug-related probation violations, when that sanction would be prohibited by Proposition 36, cannot be deemed to be consistent with the purposes of the proposition. According to the proposition's expressed purposes, its findings and declarations, and the Voter Information Guide arguments for its passage, Proposition 36 diversion was intended to (1) promote public health by expanding treatment for drug addiction and abuse; (2) enhance public safety by freeing jail cells for violent criminals; and (3) save money by affording treatment in lieu of incarceration. Senate Bill 1137's expansion of authority to jail Proposition 36 probationers for drug-related probation violations clearly

---

[10] Senate Bill 1137 added new subdivision (c)(1) and (2) to section 1210.1, which provide: "(c)(1) Any defendant who has previously been convicted of at least three non-drug-related felonies for which the defendant has served three separate prison terms within the meaning of subdivision (b) of Section 667.5 shall be presumed eligible for treatment under subdivision (a). The court may exclude such a defendant from treatment under subdivision (a) where the court, pursuant to the motion of the prosecutor or its own motion, finds that the defendant poses a present danger to the safety of others and would not benefit from a drug treatment program. The court shall, on the record, state its findings, [and] the reasons for those findings. [¶] (2) Any defendant who has previously been convicted of a misdemeanor or felony at least five times within the prior 30 months shall be presumed to be eligible for treatment under subdivision (a). The court may exclude such a defendant from treatment under subdivision (a) if the court, pursuant to the motion of the prosecutor, or on its own motion, finds that the defendant poses a present danger to the safety of others or would not benefit from a drug treatment program. The court shall, on the record, state its findings and the reasons for those findings." (Amended § 1210.1, subd. (c)(1), (2).)

[11] Under Proposition 36, section 1210.1, subdivision (b)(3) excludes: "Any defendant who: [¶] (A) While using a firearm, unlawfully possesses any amount of (i) a substance containing either cocaine base, cocaine, heroin, methamphetamine, or (ii) a liquid, nonliquid, plant substance, or hand-rolled cigarette, containing phencyclidine. [¶] (B) While using a firearm, is unlawfully under the influence of cocaine base, cocaine, heroin, methamphetamine or phencyclidine." Under Senate Bill 1137, amended section 1210.1, subdivision (b)(3) excludes: "Any defendant who, while armed with a deadly weapon, with the intent to use the same as a deadly weapon, unlawfully possesses or is under the influence of any controlled substance identified in Section 11054, 11055, 11056, 11057, or 11058 of the Health and Safety Code."

contravenes the second and third of these purposes because the amendment would reduce the jail space available for violent criminals, and increase the costs incurred in connection with nonviolent drug possession offenders.

Defendants contend that increased jail sanctions under Senate Bill 1137 are necessary to ensure that drug treatment is effective; the bill's author faulted Proposition 36 for being "all carrot and no stick." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 803 (2005–2006 Reg. Sess.) Apr. 19, 2005, pp. 13–14.) Defendants submit that we must defer in this regard to the legislative findings supporting Senate Bill 1137, which were based at least in part on studies Proposition 36 required. However, while increased jail sanctions may help prod recalcitrant Proposition 36 probationers to participate in drug treatment, the question is not whether such sanctions are good policy, rather it is whether they are consistent with the purposes of the proposition. (*Amwest, supra,* 11 Cal.4th at p. 1265.) In identifying the purposes of an initiative we must be mindful of its specific language (*id.* at p. 1260; *Foundation, supra,* 132 Cal.App.4th at p. 1370), and Proposition 36 specifically limits a court's ability to order incarceration following a first or second drug-related probation violation. "Anticipating that drug abusers often initially falter in their recovery, Proposition 36 gives offenders several chances at probation before permitting a court to impose jail time." (*In re Taylor* (2003) 105 Cal.App.4th 1394, 1397 [130 Cal.Rptr.2d 554] (*Taylor*).) An "apparent purpose and intention behind Proposition 36 [is] to give two chances to nonviolent drug offenders who commit additional nonviolent drug possession offenses or violate drug-related probation conditions to reform before they are no longer eligible for probation under the Act." (*People v. Tanner* (2005) 129 Cal.App.4th 223, 236 [28 Cal.Rptr.3d 201].) "Only upon a third violation of a drug-related condition of probation does an offender lose the benefit of Proposition 36's directive for treatment instead of incarceration." (*Taylor, supra,* 105 Cal.App.4th at pp. 1397–1398.)

Senate Bill 1137 undermines these "specific rules" within Proposition 36's "comprehensive scheme" (*People v. Guzman* (2003) 109 Cal.App.4th 341, 347 [134 Cal.Rptr.2d 727]) insofar as it expands the ability to incarcerate defendants for first and second drug-related probation violations. Because Senate Bill 1137 takes a significantly different policy approach to such violations than the one reflected in Proposition 36, this part of Senate Bill 1137 cannot be said to further the proposition, even though its professed aim was to promote the proposition's public health purpose by encouraging participation in drug treatment. Moreover, even if these provisions of Senate Bill 1137 could be deemed to further Proposition 36's public health purpose, they would still be unconstitutional because they are inconsistent with the

proposition's other primary purposes of saving jail cells for violent offenders and saving money with use of treatment instead of incarceration. (*Foundation, supra*, 132 Cal.App.4th at p. 1370 [legislation furthering one purpose of an initiative, but violating another of the initiative's "primary mandate[s]" could not reasonably be found to further initiative's purposes].) Nor can we agree with defendants' suggestion that Proposition 36's provisions for studies of its effectiveness gave the Legislature authority to amend the proposition to implement any policies the studies might support. To the contrary, the proposition only permits legislative amendments that "further the act" and are "consistent with its purposes." (Guide, *supra*, text of proposed law, § 9, p. 69.)

Under the terms of section 9 of Senate Bill 1137, the bill's amendments to Proposition 36 are not severable. This section requires that "the entire legislative measure" be put to a popular vote "[i]f any provision . . . is found to be invalid," and thus " ' "it is evident that the legislature would not have enacted the statute except in its entirety, and did not intend that any part should have effect unless the whole could be made operative. . . ." ' " (*Board of Osteopathic Examiners v. Board of Medical Examiners* (1975) 53 Cal.App.3d 78, 85 [125 Cal.Rptr. 619] [discussing when an unconstitutional provision can be severed from a statute].) Accordingly, the unconstitutionality of the drug-related probation violation provisions we have discussed renders the balance of Senate Bill 1137, apart from section 9 itself, inoperative.

We further note that Senate Bill 1137's amendment of Proposition 36 provisions for non-drug-related probation violations is also unconstitutional. While Proposition 36 allows revocation of probation and imposition of a jail sentence only upon a court's determination of a non-drug-related probation violation, Senate Bill 1137 authorizes a remand for up to 30 days in jail merely upon the prosecutor's filing of a motion to revoke probation for such a violation—an even bigger "stick" for use against Proposition 36 probationers than the two- or five-day "flash incarcerations" permitted for drug-related probation violations. This expanded opportunity for incarceration, like those provided in Senate Bill 1137 for drug-related probation violations, would be inconsistent with the money saving purpose of Proposition 36, as well as its public safety purpose, unless the alleged probation violation involved a crime of violence. Remands to jail under this portion of Senate Bill 1137 would also subvert the public health purpose of Proposition 36 by interrupting drug treatment on the basis of unproven probation

violations. For these reasons, this portion of Senate Bill 1137 cannot reasonably be read to further the purposes of Proposition 36. (*Amwest, supra*, 11 Cal.4th at p. 1256.)[12]

### B. *Popular Vote Provision*

The trial court found that section 9 of Senate Bill 1137, which provides for submission of the bill to the voters at the next statewide election if any part of it is found to be invalid, was not severable from the other sections of the bill and was thus equally ineffective. Defendants submit that this approach "lack[ed] logic" because it "appl[ied] section 9 to negate section 9" (italics omitted), and plaintiffs do not challenge section 9 on the ground cited by the trial court.

■ Plaintiffs argue, and we agree, that section 9 of Senate Bill 1137 provides in effect for a referendum because it presents the voters with a measure the Legislature has already enacted (see *Jahr v. Casebeer* (1999) 70 Cal.App.4th 1250, 1259 [83 Cal.Rptr.2d 172] [an initiative allows voters to propose new legislation; a referendum permits voters to reject legislation already adopted]; Cal. Const., art. II, § 9, subd. (a) ["referendum is the power of the electors to approve or reject statutes or parts of statutes . . ."]), and defendants do not contend that the requirements for a referendum have been satisfied (Cal. Const., art. II, § 9, subd. (a) [referendum power does not extend to urgency statutes]; *id.*, art. II, § 9, subd. (b) [a referendum is placed on the ballot by the voters, not the Legislature; petition from specified number of electors must be filed within 90 days of statute's enactment]). Defendants observe that the Legislature has the power to submit legislation to the voters (Elec. Code, § 9040) but, under California Constitution, article II, section 10, subdivision (c), an initiative cannot be amended except as permitted by its terms or "by another statute that becomes effective only when approved by the electors." Senate Bill 1137 violates this constitutional provision because it took effect immediately as an urgency measure, even though its enforcement was promptly enjoined.[13] Section 9 is therefore invalid along with the rest of Senate Bill 1137.

---

[12] In light of our analysis in part (3) above, we do not need to reach the question of the constitutionality of Senate Bill 1137 insofar as it narrows eligibility for Proposition 36 diversion.

[13] In view of these conclusions, we need not address plaintiffs' argument that section 9 of the bill is unconstitutional for the additional reason that the title of Senate Bill 1137 did not refer to conditional submission of the bill to the voters, so as to alert the legislators to this important and unusual provision of an 11th-hour budget trailer bill. (See Cal. Const., art. IV, § 9 [subject of statute must be expressed in its title; a subject not expressed in the title is void]; *Harbor v. Deukmejian* (1987) 43 Cal.3d 1078, 1096 [240 Cal.Rptr. 569, 742 P.2d 1290] [title requirement exists to afford legislators and public reasonable notice of statute's contents].)

## III. CONCLUSION

The judgment is affirmed.

Margulies, J., and Graham, J.,[*] concurred.

On November 23, 2009, the opinion was modified to read as printed above.

---

[*]Retired judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.