Filed 8/26/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| HOWARD JARVIS TAXPAYERS ASSOCIATION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> GAVIN NEWSOM, as Governor, etc. et al., <br><br> Defendants and Appellants. | C086334 <br><br> (Super. Ct. No. 34-2016-80002512-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge. Affirmed.

Xavier Becerra, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Paul Stein and Mark R. Beckington, Supervising Deputy Attorneys General, Emmanuelle S. Soichet and Amie L. Medley, Deputy Attorneys General, for Defendants and Appellants.

Megan P. McAllen and Urja Mittal for California Common Cause, League of Women Voters of California, and California Clean Money Campaign as Amici Curiae on behalf of Defendants and Appellants.

1

Bell, McAndrews & Hiltachk, Charles Bell; John C. Eastman, Anthony T. Caso; and Allen Dickerson for Plaintiffs and Respondents.

In 2016 the Legislature passed and the Governor signed Senate Bill No. 1107, amending Government Code section 85300,[1] a part of the Political Reform Act of 1974 (§§ 81000 et seq.) (Act). Section 85300 was added by Proposition 73, an initiative measure in 1988 prohibiting public funding of political campaigns. Senate Bill No. 1107 reversed this ban and permitted public funding of political campaigns under certain circumstances. Plaintiffs Howard Jarvis Taxpayer Association and Quentin Kopp challenged Senate Bill No. 1107 as an improper legislative amendment of a voter initiative. Defendants Governor Gavin Newsom and the Fair Political Practices Commission (the Commission) appeal from a judgment that invalidated Senate Bill No. 1107 and enjoined its implementation. They contend the trial court, in finding Senate Bill No. 1107 conflicted with the purposes of the Act, misconstrued the purposes of Act and erred in finding the ban on public financing of political campaigns was a primary purpose of the Act. They assert Senate Bill No. 1107, by permitting public funding of political campaigns, furthers the purposes of the Act, as codified in sections 81001 and 81002, to shrink the influence of large donors, reduce campaign spending and the advantages of incumbency, and give a voice to all citizens regardless of wealth.[2]

We affirm. We find that Senate Bill No. 1107 directly conflicts with a primary purpose and mandate of the Act, as amended by subsequent voter initiatives, to prohibit public funding of political campaigns. Accordingly, the legislation does not further the purposes of the Act, a requirement for legislative amendment of the Act.

---

[1] Further undesignated statutory references are to the Government Code.

[2] We have also considered the amicus curiae brief in support of defendants filed by California Common Cause, the League of Women Voters of California, and the California Clean Money Campaign, and plaintiffs' response thereto.

2

## BACKGROUND

*The Political Reform Act of 1974*

In 1974 the voters by an initiative measure (Proposition 9) enacted the Act, adding title 9 to the Government Code. "The initiative concerns elections and different methods for preventing corruption and undue influence in political campaigns and governmental activities. Chapters 1 and 2 contain general provisions and definitions, including a severability provision. Chapter 3 establishes the commission. Chapter 4 establishes disclosure requirements for candidates' significant financial supporters. Chapter 5 places limitations on campaign spending. Chapter 6 regulates lobbyist activities. Chapter 7 establishes rules relating to conflict of interest. Chapter 8 establishes rules relating to voter pamphlet summaries of arguments on proposed ballot measures. Chapter 9 regulates ballot position of candidates. Chapter 10 establishes auditing procedures to aid enforcement of the law, and chapter 11 imposes penalties for violations of the act." (*Fair Political Practices Com. v. Superior Court* (1979) 25 Cal.3d 33, 37 (*Fair Political Practices Com.*).)

The Act includes findings as to the deleterious effect of large contributions to political campaigns and the resulting increased influence of wealthy donors and lobbyists. (§ 81001.) Section 81002 sets forth the Act's purposes. The first three relate to financial disclosures. (§ 81002, subds. (a), (b), & (c).) The other express purposes are to convert the ballot pamphlet into a useful document, abolish laws and practices that unfairly favor incumbents, and provide adequate enforcement mechanisms to enforce the Act. (*Id,* subds. (d), (e), & (f).)

The Act provides two methods for amendment or repeal. The first is by a statute "to further its purposes" passed in each house by two-thirds vote of the membership and signed by the Governor. (§ 81012, subd. (a).) The second method is "by a statute that becomes effective only when approved by the electors." (*Id.,* subd. (b).) The Legislature has amended the Act over 200 times. (*People v. Kelly* (2010) 47 Cal.4th 1008, 1042, fn.

3

59.)  The electorate has passed four initiative measures amending the Act:  Propositions 68, 73, 208, and 34.

Various provisions of the Act have been held invalid; particularly, under the compulsion of *Buckley v. Valeo* (1976) 424 U.S. 1, those provisions limiting expenditures for political purposes, and provisions relating to lobbyists.  (See *Fair Political Practices Com., supra,* 25 Cal.3d at pp. 38, 49; Stats. 1977, ch. 1095, § 4, p. 3509 [repealing chapter 5 of the Act].)

*Propositions 68 and 73*

In 1988 California voters faced two competing initiative measures that addressed campaign funding and amended the Act, Propositions 68 and 73.  On the ballot pamphlet, the Attorney General titled Proposition 68, "Legislative Campaigns.  Spending and Contribution Limits.  Partial Public Funding.  Initiative Statute."  Proposition 68 proposed limits on campaign contributions to all candidates for the State Assembly and the State Senate, and state matching funds from voluntary designations on income tax returns for those candidates who agreed to comply with spending limits.  (Ballot Pamp., Primary Elec. (June 7, 1988) analysis of Prop. 68 by Leg. Analyst.)  The arguments against the proposition challenged the public funding of campaigns.  (*Id.,* rebuttal to argument in favor of Prop. 68 and argument against Prop. 68, pp. 14-15.)

The second initiative was Proposition 73, entitled by the Attorney General, "Campaign Funding.  Contribution Limits.  Prohibition of Public Funding.  Initiative Statute."  It proposed establishing limits of campaign contributions for all candidates for state and local elective office, and prohibiting the use of public funds for campaign expenditures and newsletters and mass mailings.  (Ballot Pamp., Primary Elec. (June 7, 1988) analysis of Prop. 73 by Leg. Analyst.)  It proposed adding a new chapter 5 to the Act that established contribution limits.  Section 85300 of this new chapter 5 provided: "No public officer shall expend and no candidate shall accept any public money for the purpose of seeking elective office."  (Ballot Pamp., *supra*, text of Prop. 73, p. 33.)  The

4

arguments in favor of Proposition 73 stressed it would not give tax dollars to politicians. (*Id.*, argument in favor of Prop. 73 and rebuttal to argument against Prop. 73, p. 34.) Proposition 73 also added section 85103, which read: "The provisions of Section 81012 shall apply to the amendments of this chapter." (Ballot Pamp., *supra*, text of Prop. 73, p. 33.)

The debate between proponents of the two measures "focused on the relative merits of the competing campaign contribution reform schemes offered to the voters in Propositions 73 and 68, with specific emphasis on the wisdom of committing public money to fund election campaigns." (*Gerken v. Fair Political Practices Com.* (1993) 6 Cal.4th 707, 719 (*Gerken*).)

The electorate approved both measures, but Proposition 73 received more affirmative votes. (*Gerken, supra,* 6 Cal.4th at p. 710.) In *Taxpayers to Limit Campaign Spending v. Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, at page 747 (*Taxpayers*), our Supreme Court held that under California Constitution, article II, section 10, subdivision (b), "when two or more measures are competing initiatives, . . . only the provisions of the measure receiving the highest number of affirmative votes [can] be enforced." The court declined to "merge" the two measures, and instead held that Proposition 73 was effective and that Proposition 68 was inoperative. (*Taxpayers,* at pp. 770-771.)

In *Service Emp. Intern. v. Fair Political Prac. Com'n* (9th Cir. 1992) 955 F.2d 1312, the Ninth Circuit affirmed the district court decision that found unconstitutional Proposition 73's contribution limits, the carry-over provision, and the ban on intra-candidate transfers.

In *Gerken, supra,* 6 Cal.4th at page 711, our Supreme Court held Proposition 73 nonetheless remained effective in part. The court found the initiative would not be invalidated entirely if "at least *one substantial part* of Proposition 73 is severable and operative." (*Id.* at p. 717.) Its ban on publicly funded mass mailings in section 89001 "most clearly and easily" met this requirement. (*Ibid.*) The Legislative Analyst

5

specifically listed the ban on publicly funded mass mailings as one of the three main goals of the initiative: "In summary, this measure: [¶] Establishes limits on campaign contributions for all candidates for state and local elective offices; [¶] Prohibits the use of public funds for these campaign expenditures; and [¶] Prohibits state and local elected officials from spending public funds on newsletters and mass mailings." (Ballot Pamp., Prop. 73, *supra*, Analysis by the Leg. Analyst, p. 32.) The analyst also emphasized the anticipated savings from this ban. (*Ibid.*) Our high court found the ban on publicly funded mass mailings was sufficiently highlighted to identify it as worthy of independent consideration such that the court could say with confidence that the electorate's attention was sufficiently focused on the ban so that it would have separately considered it absent the enjoined provisions. Because substantive provisions of Proposition 73 remained, the court concluded they should be enforced to effectuate the voters' intent. (*Gerken,* at p. 719.) The concurring opinion found that "Proposition 73's ban on the public financing of election campaigns is also severable from the enjoined contribution provisions." (*Id.* at p. 721 (conc. opn. of Baxter, J.).)

*Proposition 208*

In 1996 voters approved Proposition 208, which limited the amount of campaign contributions, established voluntary campaign spending limits, limited the period for campaign fund-raising, and established penalties for violations and increased penalties for existing campaign law violations. (Ballot Pamp., Gen. Election (Nov. 5. 1996) analysis of Prop. 208 by Leg. Analyst, p. 26.) Proposition 208 included provisions of findings and purposes. (*Id.,* text of Prop. 208, p. 89.) It also repealed article 1 of chapter 5 of title 9 of the Government Code, including section 85103, which incorporated section 81012's methods for amendment. (*Id.,* text of Prop. 208, p. 89.)

A federal district court enjoined enforcement of Proposition 208. (*California Prolife Council v. Scully* (E.D.Cal. 1998) 989 F.Supp. 1282). The injunction was

6

affirmed by the Ninth Circuit in *California Prolife Council v. Scully* (9th Cir. 1999) 164 F.3d 1189.)

*Proposition 34*

While challenges to Proposition 208 were pending, the electorate passed Proposition 34, the Campaign Contribution and Voluntary Expenditure Limits Without Taxpayer Financing Amendments to the Political Reform Act of 1974, which approved various amendments to the Act. (Stats. 2000, ch. 102, § 18, eff. July 7, 2000; Prop. 34, as approved by voters, Gen. Elec. (Nov. 7, 2000) (Sen. Bill No. 1223).) Proposition 34, like Proposition 208, included express findings and purposes. (Stats. 2000, ch. 102, § 1.) Also like Proposition 208, Proposition 34 left unchanged section 85300, the ban on public financing of campaigns. The argument in favor of Proposition 34 stressed it did not allow taxpayer dollars to be used in campaigns. "Proposition 34 does not impose taxpayer dollars to be used to finance political campaigns in California. Our tax money is better spent on schools, roads and public safety." "VOTE YES ON PROPOSITION 34 If you don't want taxpayers to pay for political campaigns." (Voter Information Guide, Gen. Election (Nov. 7, 2000) argument in favor of Prop. 34, p. 16.)

*Senate Bill No. 1107*

In 2016 the Legislature enacted Senate Bill No. 1107 which amended section 85300, the ban on publicly funded campaigns, to read:

"(a) Except as provided in subdivision (b), a public officer shall not expend, and a candidate shall not accept, any public moneys for the purpose of seeking elective office.

"(b) A public officer or candidate may expend or accept public moneys for the purpose of seeking elective office if the state or a local governmental entity establishes a dedicated fund for this purpose by statute, ordinance, resolution, or charter, and both of the following are true:

"(1) Public moneys held in the fund are available to all qualified, voluntarily participating candidates for the same office without regard to incumbency or political party preference.

"(2) The state or local governmental entity has established criteria for determining a candidate's qualification by statute, ordinance, resolution, or charter." (Stats. 2016, ch. 837, § 2, eff. Jan. 1, 2017 (Senate Bill No. 1107).)[3]

Senate Bill No. 1107 included numerous findings that public financing of campaigns furthers significant governmental interests of preventing corruption, reducing the undue influence of special interests, and facilitating and enlarging public discussion and participation in the electoral process. (Stats. 2016, ch. 837, § 1.) The bill also made an express finding that it "furthers the purposes of the Political Reform Act of 1974 within the meaning of subdivision (a) of Section 81012 of the Government Code." (*Id.,* § 6.)

*The Challenge to Senate Bill No. 1107*

Plaintiffs petitioned for a writ of mandate to compel the Commission to publish the provisions of section 85300 as enacted by Proposition 73, rather than as amended by Senate Bill No. 1107, and brought a complaint for injunctive and declaratory relief to enjoin the spending of any public funds to implement or enforce Senate Bill No. 1107 and to declare it void and of no legal effect.

Plaintiffs argued that since section 85103, incorporating the amendment provisions of section 81012 into Proposition 73, had been repealed, the Legislature had no authority to amend the provisions of Proposition 73. They further argued that Senate Bill No. 1107

---

[3] In *Johnson v. Bradley* (1992) 4 Cal.4th 389, our Supreme Court upheld a charter city measure that provided for partial public funding of campaigns for elective city office under the "home rule" provision of the State Constitution.

8

did not further the purposes of the Act which include prohibiting public financing of political campaigns.

Defendants argued section 81012 applied to the entire Act and permitted legislative amendments. They contended Proposition 73 did not change the codified purposes of the Act and Senate Bill No. 1107 furthered those purposes. They claimed plaintiffs' argument conflated the purposes of Act with the methods used to achieve those purposes.

The trial court found the Act, including provisions added by Proposition 73, could be amended by the Legislature. Any such amendment must be consistent with the purposes of the Act. Petitioners established that a significant purpose of Proposition 73 was to prohibit public monies in political campaigns and Senate Bill No. 1107 conflicted with the purposes of the Act because it violated this specific mandate. Senate Bill No. 1107 directly contradicted a fundamental purpose of the Act, as amended by Proposition 73. The court declared the provisions of Senate Bill No. 1107 void and without legal effect and issued an injunction restraining enforcement of Senate Bill No. 1107.

Defendants appealed.

## DISCUSSION

### I

*Legislative Amendment of Initiative Statute*

Article II, section 10, subdivision (c) of the California Constitution states: "The Legislature may amend or repeal referendum statutes. It may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval." "Under article II, section 10, subdivision (c), the voters have the power to decide whether or not the Legislature can amend or repeal initiative statutes. This power is absolute and includes the power to enable legislative amendment *subject to conditions attached by the*

9

*voters.*"  (*California Common Cause v. Fair Political Practices Com.* (1990) 221 Cal.App.3d 647, 652 (*Cal. Common Cause*).)

The Act includes section 81012, which provides:  "This title may be amended or repealed by the procedures set forth in this section.  If any portion of subdivision (a) is declared invalid, then subdivision (b) shall be the exclusive means of amending or repealing this title.  [¶]  (a) This title may be amended to further its purposes by statute, passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring and signed by the Governor, if at least 12 days prior to passage in each house the bill in its final form has been delivered to the commission for distribution to the news media and to every person who has requested the commission to send copies of such bills to him or her.  [¶]  (b) This title may be amended or repealed by a statute that becomes effective only when approved by the electors."  This section remains in effect despite the many amendments to the Act.

Proposition 73 included its own provision for amendment.  Former section 85103 provided:  "The provisions of Section 81012 shall apply to the amendment of this chapter."  (Ballot Pamp., Primary Elec. (June 7, 1988) text of Prop. 73, p. 33.)  This provision, however, was repealed by Proposition 208.  (See Deering's Ann. Codes, Gov. Code, § 85103.)

Respondents contend that by repealing the specific authority to amend any provisions of Proposition 73, the people exercised their right to prohibit *any* legislative amendment of any provision of Proposition 73.  We disagree.

The repeal of former section 85103 did not affect section 81012, which grants the Legislature conditional authority to amend any provision of the Act (title 9).  Nothing in the new chapter 5 of the Act limits the Legislature's ability to amend the Act beyond the limitations of section 81012 or exempts any provision of chapter 5 from the reach of section 81012.  "The [Act] provides that it may be amended or repealed if (1) the new law was passed by a two-thirds majority of the Legislature, (2) the new law furthers the

10

[Act's] purposes, and (3) the Legislature delivers a copy of the final bill, at least 12 days prior to its passage, to the Fair Political Practices Commission and anyone else who requests a copy." (*Santa Clarita Organization for Planning & the Environment v. Abercrombie* (2015) 240 Cal.App.4th 300, 320 (*SCOPE*).)

In *Cal. Common Cause, supra,* 221 Cal.App.3d 647, this court rejected a challenge to section 85300. Petitioners contended section 85300 was "unconstitutional because it binds future legislatures from enacting any laws regarding the public funding of political campaigns." (*Cal. Common Cause,* at p. 649.) We found the cases on which petitioners relied were not on point because in those cases the challenged provision "directly conflicted with authority vested in the legislative body by paramount organic law." (*Id.* at p. 650.) Section 85300 did not conflict with organic law; the issue of financing of political campaigns had not been reserved to the Legislature or excepted from the initiative power reserved to the people. (*Cal. Common Cause,* at p. 651.)

In dicta, we rejected the view that section 85300 could not be amended. "Petitioners' argument necessarily implies that section 85300 is an absolute, inflexible provision beyond the power of the Legislature to change. This ignores the fact section 85300--like other provisions of the Act--may be amended by a bill concurred in by two-thirds of the membership of the Legislature and signed by the Governor. (§ 81012, subd. (a).)" (*Cal. Common Cause, supra,* 221 Cal.App.3d at p. 651.) Appellants seize upon this language to argue this court has held section 85300 *may* be amended by the Legislature. "An amendment is a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision." (*People v. Cooper* (2002) 27 Cal.4th 38, 44.) To the extent they are arguing this court has held the Legislature may vote to remove the ban on public financing of campaigns contained in section 85300, we reject the argument. In *Cal. Common Cause* we did not consider whether a legislative amendment permitting public financing of political campaigns would further the purposes

11

of the Act.  "It is axiomatic that cases are not authority for propositions not considered."
(*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.)

II

*Furthering the Purposes of the Act*

A.  *Standard of Review*

Subdivision (a) of section 81012 places several conditions upon an amendment by
the Legislature.  Appellants challenge only the trial court's decision applying the
condition that the amendment contained in Senate Bill No. 1107 must further the
purposes of the Act and concluding that the amendment did not do so.

The Legislature made an express finding that Senate Bill No. 1107 *did* further the
purposes of the Act.  We are not bound by this finding and are not required to defer to it.
(*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1253 (*Amwest*).)  "We do,
however, apply the general rule that 'a strong presumption of constitutionality supports
the Legislature's acts.' " (*Ibid.*)  "Accordingly, starting with the presumption that the
Legislature acted within its authority, we shall uphold the validity of [Sen. Bill No. 1107]
if, by any reasonable construction, it can be said that the statute furthers the purposes of
[the Act]." (*Id.* at p. 1256.)  Because this determination is a question of law, we
independently review the trial court's decision.  (*Gardner v. Schwarzenegger* (2009) 178
Cal.App.4th 1366, 1374 (*Gardner*).

B.  *Determining the Purposes of the Act*

The parties disagree on the purposes of the Act and what determines those
purposes.

Appellants contend the purposes of the Act are limited to those set forth in
sections 81001 and 81002.  They contend these purposes are to reduce the advantages of
incumbency, reduce the influence of large contributors to campaigns, reduce campaign
spending, and ensure equal opportunity of participation in the electoral process.  In
*Amwest, supra,* 11 Cal.4th at page 1256, our Supreme Court rejected the argument that a

12

court was constrained to the express statement of purposes in determining the purpose of an initiative. Instead, evidence of its purpose can be drawn from many sources, including its historical context and ballot arguments in its favor. (*Ibid.*)

Respondents contend the chief purpose of Proposition 73 is that set forth in the title and summary prepared by the Attorney General for the ballot pamphlet at the time of the election. As described *ante*, both the title and summary for Proposition 73 included the prohibition on public funding of political campaigns. Respondents argue courts defer to the Attorney General's characterization of the chief purpose of an initiative. (*Becerra v. Superior Court* (2017) 19 Cal.App.5th 967, 975 (*Becerra*).) They argue the title and summary were prepared more than 30 years ago and it now too late to challenge them.

The deference to the Attorney General's title and summary noted in *Becerra* is appropriate when those writings are challenged as false, argumentative, and misleading, as was the case there. (*Becerra, supra,* 19 Cal.App.5th at p. 974.) Respondents cite no authority that the title and summary are binding on a court that is determining if a legislative amendment to an initiative furthers its purposes. The *Amwest* court did not specifically mention the Attorney General's title and summary as appropriate sources for determining an initiative's purposes and certainly did not so limit the inquiry. Determining whether the legislative amendment furthers the purposes of the Act is a legal question that we determine independently. (*Gardner, supra,* 178 Cal.App.4th at p. 1374.) The determination of the purpose of the Act is part of that legal question. Further, respondents' argument goes only to the purposes of *Proposition 73*; we are concerned with the purpose of *the Act as a whole*. In resolving that question, we are guided by the express statements of purpose in the Act, but also consider the initiative as a whole and the "particular language" used. (*Amwest, supra,* 11 Cal.4th at p. 1260; *Gardner,* at p. 1374.)

13

C. *Case Law*

In *Amwest, supra,* 11 Cal.4th 1243, our high court considered whether a legislative amendment to Proposition 103 that exempted surety companies from its rate regulation provisions furthered the purposes of that proposition. The express statement of purposes in the initiative identified protecting consumers, encouraging a competitive insurance market and fair and affordable insurance rates. (*Id.* at p. 1256 & fn. 9.) In determining two major purposes of Proposition 103, the court looked beyond the express statements of purposes to what the initiative actually did. "It is apparent from the foregoing that two major purposes of Proposition 103 were to reduce, by at least 20 percent, the rates for all insurance regulated under chapter 9 and to replace the former system for regulating insurance rates (which relied primarily upon competition between insurance companies) with a system in which the commissioner must approve such rates prior to their use." (*Id.* at p. 1259.)

The *Amwest* court found the exemption of surety companies from the scope of Proposition 103 did not further its purposes. (*Amwest, supra,* 11 Cal.4th at p. 1265.) It rejected the argument that the amendment merely clarified the initiative; it found the amendment altered the terms of the initiative "in a significant respect." (*Id.* at p. 1261.) While Proposition 103 altered the method of regulating insurance rates, it did not alter the types of insurance regulated, and surety insurance was so regulated. (*Id.* at p. 1260.) The surety company claimed exempting surety companies would further the purposes of Proposition 103 because neither the rate rollback nor the requirement of prior approval by the commissioner for rate increases were needed for surety insurance--surety rates were already fair and reasonable. The court noted, if this argument were true, there was a way to avoid the rollback if it would result in a confiscatory rate. (*Id.* at p. 1262.) The purpose of requiring the commissioner's prior approval for rate increases was to prevent future abuses. (*Id.* at p. 1263.)

14

In *Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1354 (*Foundation*), another legislative amendment to Proposition 103 was at issue. The amendment allowed automobile insurers to grant a persistency discount to drivers who previously had automobile insurance with any company. (*Id.* at p. 1362.) The court found one of the fundamental purposes of Proposition 103 was the elimination of discrimination against previously uninsured motorists. That purpose was set forth in a specific provision providing that the absence of prior insurance could not be used as a criterion for a discount. (*Id.* at p. 1366.) A proponent of the amendment argued no case had found the elimination of discrimination against the previously uninsured was a "purpose" of Proposition 103. The court responded the specific provision prohibiting such use of the absence of prior insurance "manifests the voters' intent to eliminate such discrimination." (*Id*. at p. 1370.) The amendment violated "this primary mandate" of Proposition 103 and thus did not further its purposes. (*Id.* at pp. 1370, 1371.)

In *Garner, supra,* 178 Cal.App.4th 1366, the appellate court found a legislative amendment of Proposition 36 that was inconsistent with terms of the initiative did not further its purposes. The express purposes of Proposition 36 were to divert nonviolent defendants charged with simple drug offenses from incarceration to substance abuse treatment, to end the wasteful expenditure on incarceration, and to enhance public safety by preserving jails and prison cells for serious and violent offenders. (*Id.* at p. 1370.) Under Proposition 36, probation could not be revoked for the first two drug-related violations of probation unless the court found defendant posed a danger or was not amenable to drug treatment. (*Id.* at p. 1375.) The amendment sought to allow short term or flash incarceration for a first or second drug-related violation of probation to enhance treatment compliance. (*Ibid.*) The court found the amendment did not further Proposition 36 because it took "a significantly different policy approach" to probation violations and undermined the specific rules of Proposition 36. (*Id.* at p. 1378.) Further, while the amendment might further the purpose of encouraging drug treatment, it was

15

inconsistent with the other primary purposes of saving jail cells for serious offenders and saving money by using treatment instead of incarceration. (*Id.* at pp. 1378-1379.)

D. *Analysis*

Appellants argue that while the prohibition on public funds for political campaigns may have been a purpose of Proposition 73, it is not a purpose of the Act as a whole. The ballot materials for Proposition 34, a later amendment of the Act, demonstrate the ban on public funds for political campaigns continues to be an important part of the Act. The argument in favor of the initiative stressed that taxpayer dollars would not be used to fund political campaigns. (Ballot Pamp., Gen. Election (Nov. 7, 2000) argument in favor of Prop. 34, p. 16.) Moreover, Proposition 34 added a new chapter 5 of the Act, entitled "the Campaign Contribution and Voluntary Expenditure Limits Without Taxpayer Financing Amendments to the Political Reform Act of 1974." (Stats. 2000, ch. 102, §1(b), pp. 1550-1551; § 85100.) Thus, Proposition 34 highlights the ban on public funds for political campaigns not just in section 85300 but in the entire chapter 5 on campaign expenditures and contributions. This emphasis shows the ban is a primary mandate of the Act.

Appellants contend that considering the ban on public funds for political campaigns to be a purpose of the Act conflates the *methods* used to achieve the Act's purposes with the purposes themselves. They offer no authority for the proposition that a method selected to achieve an initiative's purpose cannot also be a purpose of the initiative. In *Amwest,* the provisions for a rate rollback and prior approval of rate increases by the commissioner were the methods used to achieve the express purposes of protecting consumers, encouraging a competitive insurance market, and fair and affordable insurance rates. Our Supreme Court found these provisions to be "major purposes" of Proposition 103. (*Amwest, supra,* 11 Cal.4th at p. 1259.) In *Foundation, supra,* 132 Cal.App.4th at page 1371, the court found the specific provision prohibiting the use of the absence of prior insurance as a criterion for a rate discount made

16

eliminating discrimination against previously uninsured motorists a "fundamental purpose of Proposition 103."

Appellants urge that the trial court erred in relying on *Foundation* and *Gardner* because they are distinguishable. They argue that both cases invalidated a legislative amendment because although it furthered one express purpose of the initiative it was counter to another express purpose. The argument is unavailing. First, *Amwest, supra,* 11 Cal.4th at page 1256, held courts are not limited to the express statement of purpose in determining the purposes of an initiative. Second, in *Foundation, supra,* 132 Cal.App.4th at page 1370, the court found the legislative amendment conflicted with the "primary mandate" to eliminate discrimination against previously uninsured motorists. This mandate was set forth in a particular provision of Proposition 103, not in its general statement of purposes.

Appellants contend a similar legislative amendment to a prohibition in the Act was upheld in *SCOPE, supra,* 240 Cal.App.4th 300, and the trial court erred in ignoring this case. In *SCOPE,* a manager of a water company who was also a director of a water agency participated in negotiating the agency's acquisition of the water company. The enabling legislation for that water agency permitted a water company's employee to serve on the agency's board of directors and made an express exemption from a conflict of interest provision of the Act that prohibited officials from participating in contracts in which they had a financial interest, provided there was disclosure. In rejecting a challenge to the agency's acquisition of the water company, the court harmonized the conflicting provisions of the Act and the enabling legislation, finding the exception to the Act's conflict of interest provisions furthered the purposes of the Act of requiring disclosure of the conflict and permitting participation of the regulated industry in the public agency charged with that regulation. (*Id.* at p. 319.)

*SCOPE* is distinguishable from the instant case; it involved a limited exception to a provision of the Act, while still maintaining the somewhat conflicting purposes of the

17

Act.  Here, by contrast, Senate Bill No. 1107 would permit the entire elimination--the complete repeal--of the ban on public financing of election campaigns.  As we have discussed, that ban is an important part of the Act, as amended.

*Amwest, Foundation,* and *Gardner* teach that a legislative amendment that alters and conflicts with a fundamental purpose or primary mandate of an initiative does not further the purpose of the initiative and is invalid.  As in *Amwest, supra,* 11 Cal.4th at page 1261, here Senate Bill No. 1107 alters the terms of the Act "in a significant respect" by removing the ban on publicly funded election campaigns.  As in *Foundation, supra,* 132 Cal.App.4th at page 1371, here "in the guise of amending" the Act, the Legislature has instead "undercut and undermine[d] a fundamental purpose" of the Act to ban public funds in election campaigns.  As in *Gardner, supra,* 178 Cal.App.4th at page 1378, Senate Bill No. 1107 "takes a significantly different policy approach" to campaign reform than the one in the Act.  "The power of the Legislature may be 'practically absolute,' but that power must yield when the limitation of the Legislature's authority clearly inhibits its action." (*Foundation,* at p. 1371.)  Because Senate Bill No. 1107 expressly conflicts with a primary mandate of the Act, the ban on public funding of election campaigns, it is invalid.

During oral argument, the parties discussed our recent opinion in *People v. Superior Court (K.L.)* (2019) 36 Cal.App.5th 529 (*K.L.*).  Nothing in *K.L.* changes our analysis.  There, the People challenged Senate Bill No. 1391 as conflicting with Proposition 57.  Under Proposition 57, minors aged 14 or 15 could be tried in adult court only after a juvenile court conducted a transfer hearing, eliminating direct filing in adult court for these minors. (*Id*. at p. 534.)  One of the stated purposes of Proposition 57 was to have a judge, not a prosecutor, decide whether these minors should be tried in adult court. (*Ibid*.)  Senate Bill No. 1391 removed the authority of the prosecutor to seek transfer to adult court of minors aged 14 or 15, unless the minor was not apprehended until after the end of juvenile court jurisdiction. (*Id*. at p. 538.)

18

In finding Senate Bill No. 1391 furthered the purpose of Proposition 57 and did not conflict with it, we concluded the intent of Proposition 57 was not to permit the prosecution of 14- and 15-year-olds, but to reduce the number of youths who would be prosecuted as adults.  (*K.L., supra*, 36 Cal.App.5th at p. 541.)  This intent "will further other broader purposes of Proposition 57 to reduce the number of offenders incarcerated in state prisons, and to increase the opportunities for rehabilitation, particularly for juvenile offenders."  (*Ibid*.)  Senate Bill No. 1391 furthered these purposes by eliminating adult prison for 14- and 15-year-old offenders.  (*Id*. at p. 539.)

While Senate Bill No. 1391 furthered the purpose of Proposition 57 by replacing the restriction with a prohibition, Senate Bill No. 1107 does the opposite; it eliminates the existing ban.  Senate Bill No. 1107 does not further the purposes of the Act, but removes a key component of the Act.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

<table>
<tr><td></td><td>/s/</td></tr>
<tr><td></td><td>Duarte, J.</td></tr>
</table>

We concur:

<table>
<tr><td>/s/</td></tr>
<tr><td>Blease, Acting P. J.</td></tr>
</table>

<table>
<tr><td>/s/</td></tr>
<tr><td>Murray, J.</td></tr>
</table>